Rec 12/17/13
10:27 A.m.
Cam

**ATTORNEY'S NAME:** Golden, Edmund 06088
**AND ADDRESS:** Ste 1822, One Galleria Blvd
Metairie LA 70001-7575

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2013 – 11771  1  DIVISION: A  SECTION: 15

PITT, PATRICIA versus THE TIMES PICAYUNE, L.L.C. ET AL

## CITATION

TO: THE TIMES PICAYUNE, L.L.C. (PERSONAL SERVICE ONLY)
THROUGH: ITS REGISTERED AGENT: LORETA G. MINCE OR JAMES R. SWANSON
201 ST. CHARLES AVENUE
SUITE 4600
NEW ORLEANS   LA   70170

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
FOR DAMAGES DUE TO BREACH OF CONTRACT AND/OR AGE DISCRIMINATION

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

*********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA   December 13, 2013   .

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

DALE N. ATKINS, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by _____
       Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the w/i petition FOR DAMAGES DUE TO BREACH OF CONTRACT AND/OR AGE DISCRIMINATION | On this _____ day of _____ _____ served a copy of the w/i petition FOR DAMAGES DUE TO BREACH OF CONTRACT AND/OR AGE DISCRIMINATION |
| On THE TIMES PICAYUNE, L.L.C. (PERSONAL SERVICE ONLY) | On THE TIMES PICAYUNE, L.L.C. (PERSONAL SERVICE ONLY) |
| THROUGH: ITS REGISTERED AGENT: LORETA G. MINCE OR JAMES R. SWANSON | THROUGH: ITS REGISTERED AGENT: LORETA G. MINCE OR JAMES R. SWANSON |
| _____ Returned same day No. _____ Deputy Sheriff of _____ Mileage: $ _____ | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said _____ THE TIMES PICAYUNE, L.L.C. (PERSONAL SERVICE ONLY) |
| _____ / ENTERED / _____ PAPER           RETURN _____ / _____ / _____ SERIAL NO.   DEPUTY   PARISH | being absent from the domicile at time of said service. Returned same day No. _____ Deputy Sheriff of _____ |


EXHIBIT A

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2013-11711

DIVISION " "

A/15

PATRICIA PITT

VERSUS

THE TIMES-PICAYUNE, L.L.C. AND
ADVANCE PUBLICATIONS, INC.

FILED_____        _____
                                      DEPUTY CLERK

## PETITION FOR DAMAGES DUE TO BREACH OF CONTRACT AND/OR AGE DISCRIMINATION

Plaintiff, PATRICIA PITT, is domiciled in and resides in the Parish of Jefferson and hereby represents:

I.

Defendant, Advance Publications, Inc., is a corporation headquartered in New York, New York and at all times relevant to these allegations, is reportedly the largest privately held media company in the United States. At all times relevant herein, it owned and operated through various corporations and limited liability corporations the daily newspaper entitled, *The Times-Picayune*, whose publishing headquarters were/are located in New Orleans, Louisiana.

II.

Defendant, The Times Picayune, L.L.C., is authorized to do business in the State of Louisiana, was registered on December 2nd, 2004 and lists as its principal place of business 3800 Howard Ave. in New Orleans, LA. This L.L.C. is the survivor of two mergers. As will be explained in greater detail, *infra.*, plaintiff alleges this L.L.C. and Advance Publications, Inc. are sometimes referred to as the Newhouse Newspapers.

III.

At all times relevant, these defendants, and others who are currently unknown to plaintiff and best known to Defendants has acted as agent, representative, partner, joint venture or employee of one of the Defendants and has acted within the course and scope of that agency, representation, partnership, joint venture or employment, and has participated with and/or conspired with and/or has aided and abetted others, including defendants, in committing the violations of law alleged in this Petition. At all material times, each of the Defendants acted as

1

the agent, servant, partner, joint venture and/or co-conspirator of each or all of the other Defendants.

IV.

Venue is proper as all relevant actions took place in Orleans Parish including, but not limited to the breach of contract, age discrimination and damages.

V.

The Defendants enacted and contracted with Plaintiff with what is euphemistically known as the Newhouse Job Security Pledge and/or the Times-Picayune Job Security Pledge that guaranteed that Plaintiff would not be laid off or have any job action taken against her due to economic circumstances or technological change. This Job Security Pledge was considered to be an essential part of the employment contract between plaintiff and her employer. A copy of the contract is attached and incorporated as if recited herein *in extenso*.

VI.

This Job Security Pledge contract was so well-known throughout the newspaper industry that it was considered legendary. In fact, it has been touted by the Newhouse Family and these Defendants as the hallmark of the Newhouse newspapers and the reason for employee loyalty and lack of unionization at their newspapers.

VII.

Plaintiff specifically avers that she relied upon the Job Security Pledge provisions of her contract to her detriment and fully, completely and absolutely considered it part of the employment agreement between the parties.

VIII

Plaintiff began her employment with defendants in December 1997 as a Classified Advertising Floater. When her career ended with The Times Picayune, it was in the capacity as an Automotive Advertising Representative. In June 2012, Plaintiff was informed by the Advertising Director that the newspaper was downsizing and there was not a position for her with the new company. Plaintiff was terminated by Defendants on September 30, 2012 after almost fifteen (15) years of loyal employment. Plaintiff began to see a wave of employment ads in the newspaper asking people to apply and "join the team". It was clear to her that the Defendants were advertising for positions, including hers, for which she and many of her colleagues were being laid off. Plaintiff was qualified for some of these jobs and she wanted to

2

apply for these positions but she was discouraged by them and was not allowed the opportunity to be interviewed for these positions. Defendants were both downsizing and replacing the better paid older workers with younger workers willing to work for less. During the last three (3) months of her employment, the Defendants interviewed the younger replacement candidates and trained them in front of her. They made it clear to her that she was not welcome to apply for her old job and they acknowledged it was not based on past job performance. They created a hostile work environment for her, treating her as if she was "invisible", humiliating her in front of other employees by treating her as if she was a "pariah".

IX

Alternatively, Plaintiff was born on May 9, 1964. Defendants terminated Plaintiff from her employment: a) for reasons prohibited by; and violative of, the Job Security Pledge; and b) because of her age and the fact that she was one of the older employees with a higher salary and benefits package. The Defendants did not retain her or consider and hire her for one of the new positions for which she applied and for which she was qualified and instead, hired younger, less experienced employees at lower salary and benefit packages. Plaintiff was given a package containing the termination and severance pay information that "on paper" would allow her time to consider their contents but her supervisor induced fear or "pressure" to sign the papers and have them notarized or she would not be eligible for any severance pay or health insurance benefits. She was afraid to not sign the papers as she was desperate and needed the severance pay, health insurance and references that they indicated she would receive if she signed the papers quickly. The pressure to "sign now or lose what was being offered" and a refusal to provide a reference if she did not sign was overwhelming to her and she signed the papers under coercion and the threat of implied retaliation.

X.

The Job Security Pledge [contract] has been in effect for the almost fifteen (15) years while plaintiff was employed with Defendants and had been, at all material times, posted throughout the Times-Picayune facilities. The Job Security Pledge, at all material times, posted throughout the Times Picayune facilities applied to all full-time, non-represented employees of the Times Picayune, which are nearly all of the full-time employees except for a few employees of the pressroom who are represented by a union. Plaintiff met the criteria for application of the Job Security Pledge.

3

XI.

Throughout Plaintiff's employment with the *Times-Picayune*, Defendants repeatedly confirmed the Job Security Pledge to the *Times-Picayune's* full time employees on multiple occasions during each year of employment and was told by Defendants that this Job Security Pledge was a material provision in her employment contract. Plaintiff did not support unionization efforts at the newspaper as a result of this Job Security Pledge. Plaintiff wanted assurances from Defendants that the Job Security Pledge was still in place and would continue in place for existing employees such as her and Defendants' always provided those assurances to her.

XII.

Defendants intended that all employees rely upon and continue to rely on this Job Security Pledge and it had its desired effect. Talented employees, including Plaintiff, could have found employment elsewhere but stayed with the Newhouse Newspapers for this sole reason, i.e., job security even in tough economic times and in times of changing technology.

XIII.

This Job Security Pledge [contract] was particularly attractive to older employees such as Plaintiff because of the stability it offered. The Job Security Pledge provision of no-layoffs was one of plaintiff's primary inducements to continue with her employment with Defendants.

XIV.

Defendants' rationale for this and other unlawful acts to the detriment of plaintiff and other employees was the down turn in the economy and the alleged decrease in profits linked to readership shifting from print to electronic versions of the newspaper. Plaintiff will show this is a sham and a pretext as the Newhouse Newspapers have spent millions not only developing Internet business, but, now adding insult to injury, after laying off experienced workers, now says it will publish a daily paper in New Orleans.

XV.

Defendants breached their duty of good faith when they concealed or failed to disclose their true intentions underlying the efforts to jettison the Job Security Pledge thereby further damaging plaintiff with such damages continuing to this day and beyond.

XVI.

Alternatively, Plaintiff performed all of the conditions of her employment contract with Defendants and continued to rely on the assurances of Defendants that her job was secure despite the changing economic times in the publishing industry. During her almost fifteen (15) years of employment with defendants, Plaintiff did not take advantage of other job opportunities available to her with other potential employers because of her reliance on the Job Security Pledge and the assurances of defendants that she would always have a job with them even when changes in the publishing industry were occurring. Defendants later failed and/or refused to comply with their contractual and statutory obligations and their repeated promises or assurances to plaintiff over the years regarding her continued employment.

XVII.

Alternatively, Defendants wrongfully and repeatedly represented and promised employment to Plaintiff despite changes in the publishing industry. Such misrepresentations and false promises were made with the intention that Plaintiff would rely upon them and Defendants should be estopped or prevented from asserting any rights or taking any actions which are inconsistent with their prior representations and promises. These representations of Defendants repeatedly made to Plaintiff over her years of employment were binding promises and/or offers accepted by Plaintiff and considered material provisions of her employment contract that cannot be withdrawn unilaterally by Defendants.

XVIII.

Plaintiff has relied upon the representations of Defendants regarding the Job Security Pledge over her years of employment and Defendants must honor the Pledge provisions of their employment contract with Plaintiff. Defendants cannot thereafter withdraw or renege on these Job Security Pledge provisions of their employment contract with Plaintiff without consequences and payment of damages. The Job Security Pledge was included in the Employee Manual and were clear and unambiguous offers or contractual promises to Plaintiff that they would not terminate or lay her off due to economic conditions or technological changes. Yet, these are the exact reasons stated by Defendants in multiple open forums and publications as to why there were terminating hundreds of employees including Plaintiff.

XIX.

Alternatively, Plaintiff further alleges violation of Age Discrimination in Employment Act of 1967 (Pub. L. 90-202) (ADEA), as amended, as it appears in volume 29 of the United States Code, beginning at section 621, also, the Older Workers Benefit Protection Act (Pub. L. 101-433) amended several sections of the ADEA. In addition, section 115 of the Civil Rights Act of 1991 (P.L. 102-166) amended section 7(e) of the ADEA (29 U. S.C. 626(e)) as well as the regulations promulgated by the U.S. Equal Employment Opportunity Commission at *29 C.F.R. § 1601) et seq.* as well as *La.R.S. 23:031 et seq. Plaintiff filed a Formal Complaint of Discrimination with the EEOC on February 21, 2013. Plaintiff requested and received from the EEOC a Notice of Right to Sue Letter on September 20, 2013.*

XX.

Defendants conspired to rid their newspapers of older workers (over forty (40) years of age), more experienced and better paid employees by laying them off, firing them or, in general, letting them go. The disproportionate impact of defendants' willful and wanton actions on older workers (over forty (40) years of age) such as Plaintiff are shown by the protocol used by Defendants in determining which employees were terminated and not considered for retention or re-hire. Moreover, Defendants knew that their intended actions would force older employees into dire circumstances and, while saving the Defendants millions of dollars, cost Plaintiff a substantial portion of retirement and health benefits.

XXI.

To further their nefarious misdeeds, Defendants also tried to entice and/or coerce employees to sign "waivers" of their rights without giving them adequate time to obtain legal counsel and consider their legal options and making them fear that if they did not yield their rights they would lose or impact their lay-off or severance package. Such action is *contra bonum mores* and for other legal reasons should not be granted any accord or legal right.

XXII.

Defendants failed to offer Plaintiff any training or consider her skill-set for the jobs Defendants were offering in the proposed Internet effort or electronic version format publishing model despite the fact that her skills would easily have transferred to the new endeavor or Plaintiff already possessed a sufficient skill-set to maintain her employment on the e-version publishing format.

## XXIII.

Plaintiff has suffered the following damages, in an amount reasonable in the premises, which damages will surely be increased as this matter progresses:

a. Loss of income;

b. Loss of enjoyment of life;

c. Loss of retirement benefits;

d. Loss of RIPA benefits;

e. Emotional distress;

f. Diminished Earning Capacity;

g. Compensatory damages;

h. Punitive Damages;

i. Any and all other damages as are allowed by the laws of the United States of America and/or the State of Louisiana.

## XXIV.

Amicable demand has been made to no avail.

WHEREFORE, Plaintiff prays that this Petition be filed with the Clerk of Court and that Defendants be served with same; after all legal delays and proceedings, that there be judgment herein in favor of Plaintiff against Defendants for an amount consistent with the Law and evidence, all reasonable compensatory damages and applicable punitive damages allowable under applicable Law plus interest from the date of judicial demand until paid and for all costs of these proceedings. Plaintiff further prays for all general and equitable relief.

Respectfully Submitted,

GOLDEN & FONTE

_____
EDMUND W. GOLDEN, # 6088
KENNETH C. FONTE, #5649
One Galleria Boulevard
Suite 1822
Metairie, Louisiana 70001
Telephone: (504) 849-2600
Facsimile: (504) 849-2615
**Attorneys for Plaintiff,**
**Patricia Pitt**

_____
CHARLES TAYLOR, #19869
JACQUELINE G. GRIFFITH, # 18922
One Galleria Boulevard
Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 833-8080
**Attorneys for Plaintiff,**
**Patricia Pitt**

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

**SHERIFF PLEASE SERVE:**

The Times-Picayune, L.L.C.
Through its registered agent
Loretta G. Mince
    OR
James R. Swanson
**PERSONAL SERVICE ONLY**
201 St. Charles Avenue
Suite 4600
New Orleans, LA 70170

Advance Publications, Inc.
**Via La. Long Arm Statute (La. R.S. 13:3204)**
950 W. Fingerboard Road
Staten Island, NY 10305